# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

Canvasfish.com, LLC,
a Montana limited liability company,

   Plaintiff,         Case No.: 1:23-cv-611

     v.

Pixels.com, LLC,
an Illinois limited liability company,

   Defendant.

_____

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

   Plaintiff Canvasfish.com, LLC, by and through its attorneys Revision Legal, PLLC, states as follows for its Complaint and Demand for Jury Trial:

### PARTIES, JURISDICTION AND VENUE

   1.  Plaintiff Canvasfish.com, LLC ("Canvasfish") is a Montana limited liability company with its principal place of business in Traverse City, Michigan.

   2.  Defendant Pixels.com, LLC ("Pixels") is an Illinois limited liability company with its principal place of business in Santa Monica, California.

   3.  This Court has subject matter jurisdiction over the claims asserted by Canvasfish pursuant to 17 U.S.C. § 411, 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. § 1331.

   4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and/or (b)(3) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and 28 U.S.C. § 1400 because this is a district where Pixels can be found and/or because Pixels is subject to personal jurisdiction in this Court.

   5.  Personal jurisdiction is proper over Pixels because exercise thereof would not offend traditional notions of fair play or substantial justice because Pixels has purposefully availed

itself of this forum state, the cause of action arises from Pixels' activities here, and Pixels' actions have caused damage to a business residing in Michigan.

6.     Specifically, Pixels purposefully and intentionally availed itself of this forum state by manufacturing, importing, distributing, offering for sale, displaying advertising, and selling counterfeit goods bearing Canvasfish's, a resident of this state, creative works, by creating and operating interactive websites that reveal specifically intended interactions with residents of the State of Michigan and by creating advertisements selling counterfeit goods specifically to residents of the State of Michigan.

## STATEMENT OF FACTS

### Introduction

7.     Canvasfish owns the intellectual property rights of Derek DeYoung ("DeYoung"), a successful and well-known artist who has cultivated a unique artistic style primarily related to the sport of fly fishing. Because of DeYoung's success as an artist, multitudes of e-commerce stores seek to cash in on Canvasfish's artistic reputation and goodwill by listing and selling unauthorized products that use counterfeit versions of Canvasfish's federally registered trademark and identical copies of Canvasfish's federally registered copyright protected works (the "Counterfeit Products"). Defendant operates a website that advertises and sells these Counterfeit Products to customers who believe that they are purchasing official products that support Canvasfish. Specifically, Pixels sells art prints that are direct copies of Canvasfish's art prints and it advertises those art prints by blatantly utilizing Defendant's registered DEYOUNG trademark.



*Figure 1 - Screenshot from Fineartamerica.com*

8.      Canvasfish files this instant lawsuit in an effort to combat Pixels' blatant counterfeiting of its federally registered trademark and infringement of its copyrighted works and Canvasfish's goodwill, as well as to protect against the deception of unknowing customers on the internet. Canvasfish has been (and continues to be) irreparably damaged by Pixels' continued infringement of its registered trademark and copyrights, and therefore seeks both injunctive and monetary relief through this action.

**Plaintiff's Business**

9.      Canvasfish owns the intellectual property rights of DeYoung, who is a well-known artist and a graduate of the Kendall College of Art and Design.

10.     DeYoung's residence, and Canvasfish's principal place of business, is located in Traverse City, Michigan.

11.     DeYoung offers his artistic works for sale online via the <derekdeyoung.com> website.

3

12.     DeYoung's artistic works primarily focus on fish and fishing, and, in particular, the sport of fly fishing. DeYoung's unique style presents a deviation from traditional fly-fishing art, which typically uses a palate of natural colors, because his work emphasizes the rich and vibrant colors of the fish to produce a compelling result that is unlike any other artist in the field.

13.     Due to the uniqueness of his work, DeYoung has contributed his art to products produced by some of the world's largest manufacturers and retailers of sporting equipment and accessories, including collaborations with Burton Snowboards, Abel Reels, Simms, Costa, OtterBox, Buff, and Wingo Outdoors.

**Plaintiff's Registered Trademark**

14.     Canvasfish has taken significant steps to protect and register its trademark rights with the United States Patent and Trademark Office ("USPTO") as follows:

| Registration Number | Trademark | Registration Date | Goods/Services |
|---|---|---|---|
| 6,157,362 | DEYOUNG | September 22, 2020 | IC 016: Original works of art namely, paintings<br><br>IC 035: Online retail store featuring artwork, apparel, stickers, phone cases, drinkware, blankets, playing cards, boat wraps, coasters, coolers. |

15.     Canvasfish has used the DEYOUNG mark (the "DeYoung Mark") continuously and exclusively in association with online retail store services since at least as early as October 2006 as well as on original works of art since at least as early as November 2006.

16.     Examples of how Plaintiff uses the DeYoung Mark are depicted below:

*Plaintiff's Website Header:*



*Original Work of Art:*



17.     Canvasfish has expended significant efforts and sums in developing the DeYoung brand, business, and advertising under the DeYoung Mark.

18.     As a result of Canvasfish's consistent, continuous, and exclusive use of the DeYoung Mark in commerce, the mark has become well known across the globe and throughout the United States.

**Plaintiff's Registered Copyrights**

19.     Canvasfish owns several United States Copyright Registrations for its unique works of art that it makes available for sale on its website ("DeYoung Works"):

| Title | Registration No. | Work |
|---|---|---|
| 4 in 1 - Face | VA 1-910-379 |  |
| 4 in 1 Full - Brown | VA 1-934-603 |  |
| 4 in 1 – Northern Rockies | VA 1-992-855 |  |
| 4 Panel – Brown October | VA 2-076-270 |  |

| Abstract Brown Rusty Spinner | VA 1-934-676 |  |
| Abstract Cutthroat Yellowstone | VA 1-934-591 |  |
| Contemporary Brook Trout Illustration | VA 1-934-744 |  |
| Cubist Brown | VA 2-101-364 |  |

| Fab Four - Alaska | VA 1-934-684 | |
| Permitopia | VA 2-076-204 | |
| Ripples | VA 2-273-038 | |



**Exhibit 1** – Copyright Registrations.

**Defendant's Infringing Businesses**

20.     Defendant Pixels is the operator of several print on demand websites, point of sale kiosks, and a mobile phone application that advertise and manufacture physical goods bearing the DeYoung Mark and the DeYoung Works.

21.     Pixels owns and operates <fineartamerica.com>, <pixels.com>, and <designerprints.com> (collectively, the "Websites").

22.     Pixels also owns and operates the Pixels mobile phone application, which is available for both Android and Apple iPhones ("Mobile App").

23.     The Websites purport to be "print on demand" services that allow anyone with internet access instant ability to sell products bearing specific images with no discernible guardrails or protections for rights holders. Specifically, Pixels' business model is built upon permitting users to upload any image they want and providing software to visualize that image on any number of physical products. Users can then create those "products" and offer them for sale on the Websites to the public.

24.     The physical products offered through the Websites include canvas, wood, and acrylic art prints, greeting cards, phone cases, duvet covers, pillows, shower curtains, and tote bags.

25.     Pixels offers only art prints through the Mobile App, along with an augmented reality feature that allows the Mobile App's user to visualize how each respective art print will appear when it is hung on the user's wall:



26.    Pixel sources all of these physical products for its users.

27.    When a consumer places an order for these products through the Websites or the Mobile App, Pixels has created a system by which the respective Website or Mobile App submits an order to a Pixel printing facility, which then prints and ships the finished product to the consumer.

28.    In other words, Pixels is actively involved in nearly every aspect of its users' sales, providing the art, advertising, payment processor, manufacturing, printing, warehousing, and shipping for each product sold through its Websites or Mobile App.

**Defendant's Willful Infringement**

29.    On or about June 3, 2021, Canvasfish first discovered that Pixels was infringing upon its DeYoung Mark and DeYoung Works by selling and offering for sale Counterfeit Products, namely, fine art prints bearing thirty-nine (39) of the DeYoung Works and the DeYoung Mark.

30.    To ensure that these Counterfeit Products were being printed and shipped to consumers, Canvasfish, through counsel, performed a test buy of three counterfeit art prints bearing the following DeYoung Works: Fab Four – Alaska, Permitopia, and Abstract Cutthroat Yellowstone.

31.    Canvasfish received all three Counterfeit Products on June 26, 2021 in packaging that advertised Website FineArtAmerica as the seller and shipper of the Counterfeit Products.



32.    The Counterfeit Products prominently bore the DeYoung Mark, falsely indicating that they originated from Canvasfish:



33.     On June 20, 2022, Canvasfish again identified additional infringement and sale of Counterfeit Products by Pixels.

34.     Specifically, upon reviewing one of Pixels' Websites, FineArtAmerica, Canvasfish identified that eight of the DeYoung Works were being advertised and offered for sale by Pixels on Counterfeit Products, including phone cases, pouches, stickers, tapestries, puzzles, coffee mugs, beach towels, and pillows:



35.     In response, to Canvasfish's discovery, Canvasfish filed suit in the Northern

District of Illinois on September 16, 2022 under Case No. 1:22-cv-05058 and against the purported

sellers of the products listed on Pixels' FineArtAmerica Website (and several other defendants)

("Illinois Lawsuit").

36.     In the Illinois Lawsuit, Canvasfish sought a temporary restraining order, asset

restraint, and expedited discovery.

37.     The intent of the Illinois lawsuit was to unmask the purported anonymous sellers

on Pixels' Websites and freeze their payment accounts through a temporary restraining order and,

ultimately, a preliminary injunction.

38.     On September 22, 2022, Judge Harry D. Leinenweber of the Northern District of

Illinois granted a temporary restraining order and expedited discovery in favor of Canvasfish and

Canvasfish subsequently served expedited discovery on Pixels.

39.     Pixels responded to this expedited discovery by shirking its responsibility to prohibit the sale and offering for sale of works containing the DeYoung Works and DeYoung mark, stating, "Requesting that Pixels take it upon itself to search through those storefronts for the images identified in the Complaint is tantamount to asking Pixels to search for needles in a haystack."

40.     In short, Pixels declined to take any affirmative action to stop the sale or offering for sale of Counterfeit Products bearing the DeYoung Works or the DeYoung Mark on its Websites because, according it its counsel, the task of complying with the law is too difficult.

41.     Despite this very clear notice to Pixels that Canvasfish intended to enforce its rights, Pixels continued to sell Counterfeit Products through its Websites.

42.     On March 31, 2023, Canvasfish again visited the Pixels Websites and discovered that Pixels continued to not only sell and offer for sale Counterfeit Products, but it very explicitly continued to use the DeYoung Mark in doing so, describing the entire category of products as "Derek DeYoung Products" and each individual category as originating from Derek DeYoung:



43.    Each individual product listing also contains the DeYoung Mark:



44.    Pixels continues to use the DeYoung Mark to promote and sell counterfeit goods to customers online.

15

45.     Pixels also deceives unknowing consumers by using the DeYoung Mark without authorization within the content, text, and/or meta tags of its e-commerce store to attract various search engines crawling the Internet looking for websites relevant to consumer searches for authorized products bearing the DeYoung Mark.

46.     Pixel's use of the exact or substantially similar marks to the DeYoung Mark on the same goods and services sold in the same stream of commerce to every-day consumers is highly likely to cause confusion as to the origin of the goods and services among consumers.

47.     In addition to trading on Canvasfish's DeYoung Mark, Pixels also sells shirts, phone cases, pillows, wall art, coffee mugs, and other accessories bearing exact copies of the DeYoung Works.

48.     Pixels had access to the DeYoung Works via Canvasfish's online store which is published and available to anyone with internet access.

49.     Upon information and belief, Pixels, through its purported users, accessed Canvasfish's works directly from both its website, as well as its authorized Amazon brand page, and copied entire product listings, including the descriptions of the products, links within the descriptions, and the images containing the works themselves.

50.     When a customer places an order via Pixels' Websites or Mobile App, Pixels prints the selected works on low-quality products, often overseas, and ships the counterfeit products into the United States to the customer.

51.     Courts have regularly found that, where a purported service provider manufactures goods, it is not eligible for the safe harbor offered to service providers under the Digital Millennium Copyright Act. *Id. see also, Greg Young Publishing v. Zazzle, Inc.*, 2017 WL 2729584,

at *8 (C.D. Cal. May 1, 2017) (holding that because the defendant "created" the products at issue it was not dispositive that its production process was "effectively automatic").

52.     Moreover, courts have found that reproducing a mark-owner's protected marks on poor products constitutes not only trademark infringement, but also trademark counterfeiting under the law. *See H-D U.S.A., LLC v. SunFrog, LLC*, F.Supp.3d 1000, 1030 (E.D. Wis. 2018) ("SunFrog's involvement standing alone constitutes use of the marks. Using a mark involves placing it 'in any manner' on the goods in question or displays associated with them, 15 U.S.C. § 1127, and undoubtedly Harley-Davidson's marks were not maintained in the All Art database without SunFrog's effort, did not get onto SunFrog's goods without the use of SunFrog's own printers, nor did they make it to purchasers without being shipped by SunFrog.").

53.     It is clear that Pixels has ignored the wide-scale infringement on its platform due to its mistaken belief that it is a service provider that is protected by the Digital Millennium Copyright Act, which has caused it to serve as a haven for infringement.

54.     It willfully turns a blind eye to the wide-scale infringement that occurs on its purported platform.

55.     Like Canvasfish, the trademark and copyright rights of large brands, such as Carhartt, Disney, and Nintendo are regularly infringed upon on by Pixels' Websites:





**56.**    Pixels' business model is intended to induce, and collect revenue from, wide-scale copyright and trademark infringement.

<strong>Injury to Plaintiff and Consumers</strong>

**57.**    Pixels' actions described above have damaged and irreparably harmed Canvasfish.

**58.**    Consumers are highly likely to be confused due to Pixels' use of Plaintiff's exact trademark and copyrighted designs.

**59.**    If allowed to continue advertising and providing retail store services and online retail store services under the DeYoung Mark, Pixels will further damage and injure Canvasfish's reputation and the goodwill associated with the DeYoung Mark, which is well-known to the relevant consumers as a source identifier for high-quality goods and services.

**60.**    If allowed to continue advertising and offering products and services under the DeYoung Mark, Pixels will continue to create a significant likelihood of consumer confusion that will irreparably harm the public and its interest in being free from confusion.

**61.**    Canvasfish has no adequate remedy at law.

62.     Pixels knew that its activities described above constitute trademark infringement, copyright infringement, and unfair competition.

63.     Pixels acted knowingly and willfully in reckless disregard of Canvasfish's rights.

### FIRST CLAIM FOR RELIEF
### Trademark Counterfeiting and Infringement
### Under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

64.     Canvasfish restates all prior paragraphs as if fully restated herein.

65.     Pixels has used spurious designations that are identical to or substantially indistinguishable from the DeYoung Mark on goods covered by registrations for the DeYoung Mark.

66.     Pixels' actions as described above are likely to cause confusion mistake or deception as to the origin, sponsorship, or approval of Pixels' products and commercial activities, and therefore constitute trademark infringement and counterfeiting in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

67.     Pixels' actions described above have, at all times relevant to this action, been willful and intended to deceive consumers as to the source and authenticity of the Counterfeit Products.

68.     Canvasfish has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and goodwill if Pixels' actions are not enjoined.

69.     As a foreseeable, direct, and proximate cause of Pixels' above-described actions, Canvasfish and consumers have been and will continue being irreparably damaged.

70.     As a result, Canvasfish may elect, and Pixels may be held liable for, up to $2,000,000 in statutory damages per type of good sold, treble damages, Pixels' profits, the damages sustained by Canvasfish, and the costs of this action.

71.     Additionally, Canvasfish seeks its reasonable attorneys' fees because this is an exceptional case.

## SECOND CLAIM FOR RELIEF
### False Designation of Origin
### 15 U.S.C. § 1125(a)

72.     Canvasfish restates all prior paragraphs as if fully restated herein.

73.     Pixels has used the DEYOUNG mark in commerce on and in connection with its goods, specifically, its low-quality print on demand canvas, wood, and acrylic art prints, greeting cards, phone cases, duvet covers, pillows, shower curtains, and tote bags.

74.     Pixels also falsely designates Plaintiff as the origin or source of its goods.

75.     Pixels' actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiff with Pixels, or as to the origin, sponsorship, or approval of Pixels' goods, services, or commercial activities.

76.     Canvasfish has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and goodwill if Pixels' actions are not enjoined.

77.     As a foreseeable, direct, and proximate cause of Pixels' above-described actions, Canvasfish and consumers have been and will continue being irreparably damaged.

78.     As a result, Pixels may be held liable for Canvasfish's actual damages, Pixels' profits, and Canvasfish's costs.

79.     Additionally, this is an exceptional case and, therefore, Canvasfish seeks its reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF
### Copyright Infringement
### Under 17 U.S.C. §§ 106 and 501

80.     Canvasfish incorporates all foregoing paragraphs as if fully restated herein.

81.     Canvasfish owns a copyright registration for each of the DeYoung Works stated in paragraph 19 above.

82.     The DeYoung Works are widely disseminated via its own website and social media accounts, and on physical products.

83.     Pixels had access to the DeYoung Works.

84.     Pixels' purported users downloaded the DeYoung Works from Canvasfish's website and/or authorized Amazon brand page for use in their infringement/counterfeit scheme.

85.     Pixels has reproduced, prepared derivative works of, distributed copies of, imported into the United States, and displayed publicly works that are identical copies of, or substantially similar to, Canvasfish's works.

86.     As a result of Pixels' infringement, Canvasfish has suffered extensive monetary damages.

87.     Canvasfish is entitled to the recovery of, at its election, statutory damages of up to $150,000 per work infringed, actual damages, Defendant's profits, and the costs of this action.

88.     Canvasfish is also entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502 and 17 U.S.C. § 106.

89.     Canvasfish is also entitled its attorneys' fees pursuant to 17 U.S.C. § 505 and § 17 U.S.C. § 106.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF THE RIGHT OF PUBLICITY**
**Under Common Law**

90.     Canvasfish restates all prior paragraphs as if fully restated herein.

91.     DeYoung has a pecuniary interest in his identity, which has been assigned to Canvasfish.

92.     Specifically, DeYoung, as a famous artist, signs each of his works of art, including the DeYoung Works, with his last name.

93.     Pixels has used DeYoung's name to falsely indicate that its low-quality print on demand canvas, wood, and acrylic art prints, greeting cards, phone cases, duvet covers, pillows, shower curtains, and tote bags originate from Pixels, not DeYoung.

94.     Further, Pixels has displayed DeYoung's name on its Websites and in its Mobile App to falsely indicate that it has an association with Canvasfish, that its services are sponsored or endorsed by Canvasfish, and that Canvasfish authorizes the printing and sale of the DeYoung Works through Pixels' Websites and Mobile App.

95.     Therefore, Pixels has commercially exploited DeYoung's name, which has been assigned to Canvasfish, without approval or authorization.

96.     Pixels' commercial exploitation of DeYoung's name has caused Canvasfish damages, including a loss of income and of goodwill in the DeYoung name.

97.     Consequently, Canvasfish requests that the Court award it actual damages, Pixels' profits, and Canvasfish's costs for invasion of privacy—misappropriation of name or likeness.

## PRAYER FOR RELIEF

WHEREFORE, Canvasfish respectfully requests that this Honorable Court grant the following relief:

1.  That the Court preliminarily and permanently enjoin and restrain Pixels, as well as its heirs, successors, assigns, officers, agents, and employees from:

    a.  Reproducing, preparing derivative works of, distributing copies of, and displaying publicly the DeYoung Works;

    b.  Manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the DeYoung Mark or any confusingly similar trademark;

  c. Using the DeYoung Mark or any reproduction, counterfeit copies or imitations thereof in any manner in connection with the manufacturing, delivering, distribution, marketing, advertising, offering for sale, or sale of any product that is not a legitimate product bearing the DeYoung Mark or is not authorized by Canvasfish to be sold in connection with the DeYoung Mark;

  d. Passing off, inducing, and/or enabling others to sell or pass off any product as a genuine product bearing the DeYoung Mark or any other product produced by Canvasfish that is not Canvasfish's product or not otherwise produced with the authorization of Canvasfish for sale under the DeYoung Mark;

  e. Committing any acts reasonably calculated to cause consumers to believe that Defendants' products bearing the DeYoung Mark are those sold under the authorization, control, and/or supervision of Canvasfish or sponsored by, approved by, or otherwise connected to Canvasfish;

  f. Further infringing the DeYoung Mark and causing further damage to Canvasfish's goodwill; and

  g. Aiding or assisting any other third party in subsections (a) and (f) above;

2. That the Court award Canvasfish, at its election, its actual damages, lost profits, consequential damages, exemplary damages, statutory damages, and any other damages allowable under law, including an equitable accounting;

3. That the Court award Canvasfish its costs and attorneys' fees; and,

4. That the Court award Canvasfish any other relief to which it is entitled.


       Respectfully submitted,


Date: June 12, 2023     /s/ John Di Giacomo
          Eric Misterovich (P73422)
          John Di Giacomo (P73056)
          Eric Turnbull (P76382)
          Revision Legal, PLLC
          444 Cass St., Suite D
          Traverse City, MI 49684
          231-714-0100
          eric@revisionlegal.com
          john@revisionlegal.com
          eturnbull@revisionlegal.com

          *Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a trial by jury for all eligible counts contained within this Complaint.

Respectfully submitted,

Date: June 12, 2023

/s/ John Di Giacomo
Eric Misterovich (P73422)
John Di Giacomo (P73056)
Eric Turnbull (P76382)
Revision Legal, PLLC
444 Cass St., Suite D
Traverse City, MI 49684
231-714-0100
eric@revisionlegal.com
john@revisionlegal.com
eturnbull@revisionlegal.com

*Attorneys for Plaintiff*